UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOMURA ASSET ACCEPTANCE CORPORATION
ALTERNATIVE LOAN TRUST, SERIES 2007-1, by
HSBC BANK USA, NATIONAL ASSOCIATION, in
its capacity as Trustee,

          Plaintiff,

          -against-

NOMURA CREDIT & CAPITAL, INC.,

          Defendant.

Civil Action No.: 13 CV 3138 (JPO)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NOMURA CREDIT & CAPITAL, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT

Joseph J. Frank
Matthew L. Craner
Paul F. Rugani
James Grohsgal
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, New York 10019-6150
Tel: (212) 506-5000
Fax: (212) 506-5151

*Attorneys for Defendant*
*Nomura Credit & Capital, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ................................................................. 5

    A.    The NAAC 2007-1 Trust Is Formed And Issues Certificates ............................... 5

    B.    The Trustee Forwards "Notice" Of Alleged Breaches To Nomura ...................... 7

    C.    Prior To Plaintiff Filing This Action, Ambac Sues Nomura In New York Supreme Court Under The Same PSA Seeking Repurchase Of The Same Mortgage Loans Based On The Same Breach Notices ......................................... 7

LEGAL STANDARD ................................................................. 8

ARGUMENT ................................................................. 9

I.    THIS COURT LACKS SUBJECT-MATTER JURISDICTION ..................................... 9

    A.    Ambac Is A Necessary And Indispensable Party Whose New York Residence Defeats Diversity Jurisdiction ................................................. 9

        1.    Ambac Is A Necessary And Indispensable Party ................................... 10

        2.    Because Ambac's Joinder Defeats Diversity Jurisdiction, This Action Should Be Dismissed ................................................. 12

    B.    The Trust Beneficiaries' Citizenship Defeats Diversity Jurisdiction ................. 15

II.    PLAINTIFF'S CAUSES OF ACTION FOR DAMAGES ARE BARRED BY THE PARTIES' CONTRACTS ................................................................. 17

    A.    Plaintiff Is Bound By The Contractual Sole Remedies For Any Breaches Of The Mortgage Representations ................................................. 17

    B.    The Trustee Cannot Avoid The Sole Remedies To Which It Agreed ................ 18

III.    PLAINTIFF'S FIRST CAUSE OF ACTION FOR SPECIFIC PERFORMANCE FAILS ................................................................. 20

# TABLE OF CONTENTS
(continued)

**Page**

A.   Plaintiff Has Not Alleged That The Loans For Which It Seeks Repurchase Are Capable Of Being Repurchased ................................................................. 20

B.   Plaintiff Fails To Plead Facts To Support Its Conclusory Allegations Of Breach ............................................................................................................... 22

IV.   PLAINTIFF'S THIRD CAUSE OF ACTION FOR BREACH OF THE "NOTICE" PROVISION FAILS ....................................................................... 24

CONCLUSION ......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraham v. American Home Mortg. Servicing, Inc.*,
   --- F. Supp. 2d ---, 2013 WL 2285205 (E.D.N.Y. May 23, 2013)....................................23, 24

*Ambac Assurance Corp. v. EMC Mortg. LLC*,
   No. 651013/12, 2013 WL 2919062 (Sup. Ct, N.Y. Cnty. June 13, 2013).............................18

*Assured Guar. Corp. v. EMC Mortg., LLC*,
   39 Misc. 3d 1207(A), 2013 WL 1442177 (Sup. Ct., N.Y. Cnty. Apr. 4, 2013) .................3, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................9

*Assured Guar. Mun. Corp. v. DLJ Mortg. Capital, Inc.*,
   964 N.Y.S.2d 57, 2012 WL 5192752 (Sup. Ct., N.Y. Cnty. Oct. 11, 2012) .........................18

*Astra Oil Trading NV v. PRSI Trading Co. LP*,
   No. 08 Civ. 10467 (NRB), 2009 WL 928672 (S.D.N.Y. Apr. 6, 2009)................................17

*Astra Oil Trading v. PRSI Trading Co. LP*,
   794 F. Supp. 2d 462 (S.D.N.Y. 2011)..............................................................................12, 16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).....................................................................................................9

*Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*,
   No. 8: 07-CV-00690, 2008 WL 1817294 (M.D. Fla. Apr. 22, 2008)....................................20

*Bear Stearns Mortg. Funding Trust 2007-AR2 v. EMC Mortg. LLC*,
   No. 6861-CS, 2013 WL 164098 (Del. Ch. Jan. 15, 2013)....................................................19

*BNP Paribas Mortg. Corp. v. Bank of America, N.A.*,
   Nos. 09 Civ 9783 and 09 Civ 9784, 2013 WL 2452169 (S.D.N.Y. June 6, 2013)................9

*Boise Cascade Corp. v. Wheeler*,
   419 F. Supp. 98 (S.D.N.Y. 1976) ....................................................................................12, 13

*Carden v. Arkoma Assocs.*,
   494 U.S. 185 (1990)...............................................................................................................16

*Citipro Realty Corp. v. Lorac Mgmt. Co.*,
   681 N.Y.S.2d 536 (1st Dep't 1998) .......................................................................................4

*Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*,
    No. 09 Civ. 1431, 2009 WL 2135396 (S.D.N.Y. July 16, 2009) ............................................9

*Davis v. United States*,
    192 F.3d 951 (10th Cir. 1999) ............................................11

*Deutsche Lufthansa AG v. The Boeing Co.*,
    No. 06 Civ. 7667, 2006 WL 3155273 (S.D.N.Y. Oct. 30, 2006) ............................................18

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*,
    160 F.3d 925 (2d Cir. 1998) ............................................15

*Emerald Investors Trust v. Gaunt Parsippany Partners*,
    492 F.3d 192 (3d Cir. 2007) ............................................15, 16

*Envirotech Corp. v. Bethlehem Steel Corp.*,
    98 F.R.D. 250 (S.D.N.Y. 1983) *aff'd*, 729 F.2d 70 (2d Cir. 1984) ............................................14

*Errico v. Stryker Corp.*,
    281 F.R.D. 182 (S.D.N.Y. 2012) ............................................14

*Errico v. Stryker Corp.*,
    No. 10 Civ. 3960, 2010 WL 5174361 (S.D.N.Y. Dec. 14, 2010) ............................................11, 12

*First Bank Richmond, Nat'l Ass'n v. Credit Suisse First Boston Corp.*,
    No. 1: 07-CV-1262, 2008 WL 4410367 (S.D. Ind. Sept. 24, 2008) ............................................19

*First Place Bank v. Skyline Funding, Inc.*,
    No. 10 Civ. 2044, 2011 WL 3273071 (N.D. Ill. July 27, 2011) ............................................22

*Footbridge v. Countrywide Home Loans, Inc.*,
    No. 09 Civ. 4050, 2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) ............................................23

*Hadcock Motors, Inc. v. Metzger*,
    459 N.Y.S.2d 634 (4th Dep't 1983) ............................................20

*Ing. Hoschek Autoverleich GES.M.B.H. v. Balag, Ltd.*,
    No. 93 Civ. 8513, 1994 WL 701989 (S.D.N.Y. Dec. 14, 1994) ............................................14

*Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
    655 F.3d 136 (2d Cir. 2011) ............................................22

*JPMCC 2005-CIBC13 Collins Lodging, LLC v. Philips S. Beach, LLC*,
    No. 10-20636-CIV, 2010 WL 4317000 (S.D. Fla. Oct. 22, 2010) ............................................15

*Kel Kim Corp. v. Cent. Mkts., Inc.*,
    70 N.Y.2d 900 (1987) ............................................22

*L.K. Station Grp., LLC v. Quantek Media, LLC*,
   879 N.Y.S.2d 112 (1st Dep't 2009) ............................................................3, 18

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)..........................................................................8

*Manzi v. Rossi*,
   493 N.Y.S.2d 796 (2d Dep't 1985)...............................................................20

*MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortgage Corp.*,
   843 F. Supp. 2d 996 (D. Minn. 2012)......................................................18, 19

*MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortgage Corp.*,
   No. 11 Civ. 2542, 2012 WL 4511065 (D. Minn. Oct. 1, 2012)...........................21

*Merrill Lynch Int'l v. XL Capital Assurance Inc.*,
   564 F. Supp. 2d 298 (S.D.N.Y. 2008)............................................................18

*Mestousis Enters. v. Concord Blue Inc.*,
   No. 11 Civ. 3384, 2012 WL 254987 (S.D.N.Y. Jan. 27, 2012)..............................3

*Mills 2011 LLC v. Synovus Bank*,
   921 F. Supp. 2d 219 (S.D.N.Y. 2013)............................................................16

*Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2005-S4 v. Nomura Credit & Capital, Inc.*,
   No. 653541/2011, 2013 WL 2072817 (Sup. Ct., N.Y. Cnty. May 10, 2013)..............19, 20, 25

*Quantlab Financial, LLC v. Tower Research Capital, LLC*,
   715 F. Supp. 2d 542 (S.D.N.Y. 2010)............................................................16

*River Point Towers Coop., Inc. v. Am. DG, Inc.*,
   No. 11 Civ. 6645, 2012 WL 847322 (S.D.N.Y. Mar. 13, 2012) ......................4, 20

*Shermoen v. United States*,
   982 F.2d 1312 (9th Cir. 1992) ......................................................................11

*Shipping Fin. Servs. Corp. v. Drakos*,
   140 F.3d 129 (2d Cir. 1998)...........................................................................8

*Smith v. Kessner*,
   183 F.R.D. 373 (S.D.N.Y. 1998) .......................................................11, 13, 14

*Spiro v. Parker Bros.*,
   No. 91 Civ. 7759, 1992 WL 197405 (S.D.N.Y. Aug. 4, 1992) ......................11, 14

*Toney-Dick v. Doar*,
   No. 12 Civ. 9162, 2013 WL 1314954 (S.D.N.Y. Mar. 18, 2013) ...........................8

*Torchlight Loan Servs., LLC v. Column Fin., Inc.*,
  No. 11 Civ. 7426, 2012 WL 3065929 (S.D.N.Y. July 25, 2012) ...........................................25

*Travellers Int'l AG v. Trans World Airlines, Inc.*,
  722 F. Supp. 1087 (S.D.N.Y. 1989)...........................................................................................20

*U.S. Bank Nat'l Ass'n v. Coop. Dist. of Spanish Fort – Highway 98 Pub. Facilities*,
  Civ. 11-0401-WS-M, 2011 WL 4499309 (S.D. Ala. Sept. 29, 2011) ....................................16

*Valentini v. Citigroup, Inc.*,
  837 F. Supp. 2d 304 (S.D.N.Y. 2011)........................................................................................24

*Walnut Place LLC v. Countrywide Home Loans, Inc.*,
  948 N.Y.S.2d 580 (1st Dep't 2012) ...........................................................................................19

*Weber v. King*,
  110 F. Supp. 2d 125 (E.D.N.Y. 2000) .......................................................................................11

*Wells Fargo Bank, N.A. v. Bank of America, N.A.*,
  No. 10 Civ. 9584, 2013 WL 1285289 (S.D.N.Y. Mar. 28, 2013) (Oetken, J.).......................21

*Westmoreland Coal Co. v. Entech, Inc.*,
  100 N.Y.2d 352 (2003) ..............................................................................................................18

*William A. Gross Constr. Assoc's., Inc. v. Am. Mfrs. Mut. Ins. Co.*,
  No. 07 Civ. 10639, 2009 WL 427280 (S.D.N.Y. Feb. 23, 2009) ............................................12

*Yueh-Lan Wang ex rel. Wong v. New Mighty U.S. Trust*,
  841 F. Supp. 2d 198 (D.D.C. 2012) ..........................................................................................16

**Statutes**

28 U.S.C. § 1332.................................................................................................................1, 12, 16, 17

**Rules**

Federal Rule of Civil Procedure 8 ....................................................................................................1, 9

Federal Rules of Civil Procedure 12 ..........................................................................................*passim*

Federal Rule of Civil Procedure 19 ...........................................................................................*passim*

Defendant Nomura Credit & Capital, Inc. ("NCCI" or "Nomura") respectfully submits this memorandum in support of its motion, pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), 12(b)(6) and 12(b)(7), to dismiss the Amended Complaint of Plaintiff Nomura Asset Acceptance Corporation Alternative Loan Trust, Series 2007-1 ("Plaintiff" or the "Trust"), by HSBC Bank USA, National Association, in its capacity as Trustee (the "Trustee").

## PRELIMINARY STATEMENT

This lawsuit is a futile attempt by Plaintiff to sidestep the requirements of subject matter-jurisdiction and to rewrite the unambiguous terms of contracts entered into by sophisticated entities.  Plaintiff asks this Court to step outside the contracts and, in effect, redraft numerous provisions to subject Nomura to liability and provide remedies that the contracts do not permit. New allegations in the Amended Complaint do not rectify this fundamental flaw in the pleadings. Consequently, all of Plaintiff's claims fail and the Amended Complaint should be dismissed.

*First*, this court lacks subject-matter jurisdiction because the parties are not diverse under 28 U.S.C. § 1332(a)(2).  As an initial matter, pursuant to Fed. R. Civ. P. 19(a), Plaintiff has failed to join a necessary and indispensable party to this litigation, Ambac Assurance Corporation ("Ambac"), an insurer for a class of certificates in the residential mortgage-backed securities ("RMBS") offering in this case.  Ambac is currently litigating claims concerning the same offering – and seeking similar relief – in New York State Supreme Court.  Plaintiff's Amended Complaint asserts breach based on the *very same* notices of breach that Ambac sent to the Trustee and on which Ambac is suing.  Am. Compl. ¶¶ 48-49.  Plaintiff's failure to join Ambac warrants dismissal under Fed. R. Civ. P. 12(b)(7) because, although Ambac is required to be joined under Fed. R. Civ. P. 19(a), its joinder is not feasible.  Ambac and Nomura are both New York citizens for diversity purposes and Ambac's joinder would thus defeat this Court's diversity jurisdiction.  Plaintiff also cannot establish diversity jurisdiction among the *current*

parties to the case, which provides an independent basis to dismiss this action.  Plaintiff is the

Trust and as such is deemed to have the citizenship of all of its beneficiaries, which are the

certificate holders of the Trust.  One of those certificate holders is American International Group,

Inc. ("AIG"), which, like Nomura, is a New York citizen for diversity purposes.  Consequently,

the complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

***Second***, Plaintiff's second cause of action and the portion of its third cause of action

requesting damages fail because the contracts at issue expressly bar damages for breaches related

to the mortgage loans, making cure or repurchase the sole available remedy.  Those contracts are

a Mortgage Loan Purchase Agreement ("MLPA") and a Pooling and Servicing Agreement

("PSA") entered into in connection with the formation of the Trust.  The agreements provided,

among other things, for the sale of mortgage loans from Nomura to Nomura Asset Acceptance

Corporation ("NAAC"), a special purpose entity known as a "depositor," which then sold the

loans to the Trust.  Nomura made a series of representations and warranties about the mortgage

loans in Section 8 of the MLPA, entitled "Representations and Warranties of the Seller Relating

to the Mortgage Loans" (the "Mortgage Representations"), which were incorporated into the PSA.

The Trustee is a party to the PSA and, through the PSA, has the rights of a party under the

MLPA.  In the PSA, the Trustee agreed to specific sole remedies, following a specific protocol, in

the event of any material breach of any Mortgage Representation.  In particular, Section 2.03(c) of

the PSA specifies that, in the event of a breach that "materially and adversely affects the interests

of the related Certificateholders . . .  in any Mortgage Loan," Nomura shall "cure such breach,"

"substitute . . . a Replacement Mortgage Loan" (a remedy available only for a limited time), or

"repurchase the affected Mortgage Loan or Mortgage Loans."  Any repurchase must be at the

contractually specified "Purchase Price" and "in the manner set forth" in the PSA.  *Id.*  To obtain

repurchase, the Trustee must, among other things, "release the related Mortgage File" to Nomura and "transfer title" and "the Trustee's interest to [Nomura] to any Mortgage Loan" repurchased pursuant to Section 2.03. PSA §2.03(d).  As a party to the PSA, the Trustee "understood and agreed that the obligation under [the PSA] of [Nomura] *to cure, repurchase or replace any Mortgage Loan as to which a breach has occurred* or is continuing *shall constitute the sole remedies* against [Nomura] respecting such breach available to . . . [the Trustee]."  *Id.* (emphasis supplied).

Plaintiff disregards the sole remedies to which the Trustee agreed and instead seeks wide-ranging relief far beyond what the contracts allow.  Am. Compl. ¶¶ 70, 76-77, 87-88, Prayer for Relief ¶¶ (a)-(c).  New York law, however, enforces contractual limitations on the remedies available for breach.  "Where a contract provides a particular remedy, the parties are limited to the remedy provided for in the contract."  *Mestousis Enters. v. Concord Blue Inc.*, No. 11 Civ. 3384, 2012 WL 254987, at *3 (S.D.N.Y. Jan. 27, 2012); *see also L.K. Station Grp., LLC v. Quantek Media, LLC*, 879 N.Y.S.2d 112, 117 (1st Dep't 2009) (enforcing "explicit language" that "pointedly circumscribes the remedies available").  Indeed, New York courts have rejected RMBS claims for damages identical to the ones at issue here.  *See, e.g.*, *Assured Guar. Corp. v. EMC Mortg., LLC*, 39 Misc. 3d 1207(A), 2013 WL 1442177, at *5 (Sup. Ct., N.Y. Cnty. Apr. 4, 2013) ("*EMC*") (all breach claims that "relate to, and overlap with," loan-level representations subject to a repurchase protocol are limited to cure or repurchase as the sole available remedies).  Plaintiff's pursuit of damages departs from the plain language of the parties' contracts and would eliminate the sole remedies to which the parties expressly agreed.  Plaintiff also cannot obtain something other than the sole remedy based on an allegation that Nomura refused to provide that

remedy.  Accordingly, this Court should dismiss Plaintiff's second cause of action and the portion of its third cause of action seeking damages.

**Third**, Plaintiff's first cause of action and the portion of its third cause of action requesting specific performance fail for two reasons.  First, Plaintiff has not alleged that the conditions for repurchase set forth in the PSA – namely, a Purchase Price greater than $0 and the ability to transfer to Nomura the repurchased loan – are capable of being satisfied, as they must to obtain specific performance.  *See River Point Towers Coop., Inc. v. Am. DG, Inc.*, No. 11 Civ. 6645, 2012 WL 847322, at *3 (S.D.N.Y. Mar. 13, 2012) ("The test for specific performance . . . requires proof that . . . plaintiff and defendant are each able to continue performing their part of the agreement."); *Citipro Realty Corp. v. Lorac Mgmt. Co.*, 681 N.Y.S.2d 536, 537 (1st Dep't 1998) (specific performance is unavailable in the "absence of evidence that plaintiffs were ready, willing and able to perform their respective obligations under the agreements").  There can be no dispute that Nomura cannot repurchase loans that no longer exist or are no longer part of the Trust.  Plaintiff has failed to allege, however, that any of the loans for which it seeks repurchase remain assets of the Trust capable of being repurchased.  Second, the Amended Complaint's threadbare recitals of alleged breaches of Mortgage Representations rely upon the conclusory and generalized opinions derived from a purported loan re-underwriting review without alleging facts that, even if true, would prove that certain mortgage loans breached the representations and warranties in the agreements.

**Fourth**, Plaintiff's third cause of action also fails because the "notice" provision of the PSA does not create a separate duty that can give rise to a separate cause of action.  Moreover, Plaintiff's assertion that Nomura was aware of breaches at the time of the securitization is not supported by any factual allegations.  Instead, Plaintiff asserts only that because there were many

alleged breaches, Nomura must have known about them at the time.  New York courts reject

pure hindsight allegations like these, and this Court should as well.

## STATEMENT OF FACTS[1]

### A.    The NAAC 2007-1 Trust Is Formed And Issues Certificates.

Prior to April of 2007, various originators originated mortgage loans consisting of

adjustable-rate, first-lien mortgage loans.  These loans functioned as collateral for certain classes

of certificates in the NAAC 2007-1 offering (the "Transaction").  The Prospectus Supplement

disclosed that underwriting standards for loans were "generally less stringent than, the

underwriting standards established by Fannie Mae or Freddie Mac."  Craner Decl. Ex. B at S-95.

It also disclosed that "[d]elinquencies and losses with respect to residential mortgage loans

generally have increased in recent months, and may continue to increase."  *Id.* at S-50.

In the Transaction, NCCI purchased the Mortgage Loans from the originators and

aggregated them into loan pools.  Acting as the "Seller," NCCI then sold the loans to NAAC, the

Depositor.  The sales from NCCI to NAAC were effected pursuant to the MLPA.  NAAC, in

turn, transferred the loans and its rights under the MLPA to the Trust pursuant to the PSA.

Nomura made a number of representations and warranties in the MLPA and PSA.  Most

relevant to this action are the Mortgage Representations – 63 separate "Representations and

Warranties of the Seller Relating to the Mortgage Loans" made in Section 8 of the MLPA.

Those representations relate to characteristics of the Loans and to the process by which the

Loans were originated.  *See, e.g.*, MLPA § 8(xli) ("Each Mortgage Loan is and will be a

mortgage loan arising out of the originator's practice in accordance with the originator's

---

[1] Unless otherwise indicated, the facts described herein are as alleged in the Amended Complaint and are accepted as true for purposes of this motion only.  For ease of the Court's reference, the Amended Complaint and its exhibits, including the PSA (Ex. 1) and the MLPA (Ex. 2), are attached as Exhibit A to the Declaration of Matthew L. Craner in Support of Defendant Nomura Credit & Capital, Inc.'s Motion to Dismiss the Amended Complaint ("Craner Decl.").

underwriting guidelines"). The Mortgage Representations are incorporated into the PSA. PSA § 2.03(b)(vii) ("The representations and warranties set forth in Section 8 of the Mortgage Loan Purchase Agreement are true and correct as of the Closing Date.").

The PSA plainly specifies the sole remedies available in the event that there is a breach of the Mortgage Representations that "materially and adversely affects the value of the related Mortgage Loan." PSA § 2.03(c). Those remedies are expressly limited to cure or repurchase of the "defective" mortgage loan, or substitution of a conforming loan, with substitution being available for only two years. *Id*. Under the PSA, cure or repurchase "shall constitute the ***sole remedies*** against [Nomura]" *Id*. (emphasis supplied). Neither the MLPA nor the PSA provides a transaction-wide remedy for the breach of any representation or warranty, even if such breaches are alleged as to more than one of the Loans.

Any loan repurchased for breach of the Mortgage Representations must be repurchased pursuant to the conditions set forth in § 2.03(c) of the PSA. The PSA specifies that the loan will be repurchased for the "Purchase Price," which is defined as the sum of (i) 100% of the outstanding principal balance of the Mortgage Loan as of the date of repurchase; (ii) 30 days' accrued interest thereon plus any applicable servicing fees; and (iii) any costs and damages of the Trust Fund in connection with any violation by such Mortgage Loan of any abusive or predatory lending law. PSA § 1.01. Upon payment of the Purchase Price, to complete the repurchase the Trustee must release the related mortgage file to Nomura and execute and deliver instruments of transfer or assignment to Nomura as necessary to transfer title to, and the Trustee's interest in, the repurchased mortgage loan. PSA § 2.03(c).[2]

---

[2] Other interim steps, such as the delivery of an Officer's Certificate by the Servicer to the Trustee certifying the deposit, the receipt of a Request for Release, and, if necessary, an Opinion of Counsel, are also required in the repurchase process. PSA § 2.03(d)..

**B.      The Trustee Forwards "Notice" Of Alleged Breaches To Nomura.**

Plaintiff asserts claims based on three different groups of letters sent to the Trustee purporting to identify breaching mortgage loans.  The first group of these letters allegedly was sent by Ambac, an insurer for certain of the certificates.  Am. Compl. ¶¶ 48-49; Craner Decl. Ex. C.  The second group allegedly was sent by an unnamed certificate holder.  Am. Compl. ¶¶ 50-51; Craner Decl. Ex. D.  The third group allegedly was sent by Wells Fargo in its capacity as Master Servicer for the Trust.  Am. Compl. ¶¶ 52-54; Craner Decl. Ex. E.

After receiving each of these letters, the Trustee forwarded them to Nomura, generally stating that it "has not conducted any independent review of the facts asserted in the [letters] and makes no representation as to the accuracy of the information contained therein."  Craner Decl. Exs. F.[3]  In each instance, Nomura reviewed the allegations of breach received from the Trustee and responded within the timeframe provided in the agreements.  Where Nomura believed that the breach allegations had potential merit, it offered to repurchase the loans upon demonstration that the breach had the requisite material and adverse effect and that the Trustee could comply with the PSA's conditions to repurchase.  Craner Decl. Ex. H.  With respect to the other demands, Nomura provided a detailed response explaining why the information contained in the purported notice failed to establish any material breach of a representation or warranty.  *Id*.  Because Nomura has no obligation to repurchase a loan that is not in material breach of a Mortgage Representation, it declined to repurchase those loans.

**C.      Prior To Plaintiff Filing This Action, Ambac Sues Nomura In New York Supreme Court Under The *Same* PSA Seeking Repurchase Of The *Same* Mortgage Loans Based On The *Same* Breach Notices.**

Ambac issued an unconditional and irrevocable insurance policy that insured the NAAC

---

[3] On June 10, 2013, the certificate holder informed the Trustee and Nomura that it was withdrawing and rescinding its notices of breach and repurchase demands concerning the Securitization.  *See* Craner Decl. Ex. G.

2007-1 Class II-A-M Certificates.  Craner Decl. Ex. I; *see* Am. Compl. ¶ 22.  Ambac also is an express third-party beneficiary of the PSA.  PSA § 11.13.  The PSA permits Ambac to exercise the same rights that would otherwise belong to the holders of the Class II-A-M Certificates, subject to certain conditions.  PSA §§ 11.13, 12.01.  Ambac, a Wisconsin corporation with its principal place of business in New York, is a New York citizen.  Craner Decl. Exs. J and K at ¶ 16.  Weeks before this action was filed, Ambac sued Nomura in New York Supreme Court.  Craner Decl. Ex. K.  Like Plaintiff, Ambac relies on the same breach notices it sent to the Trustee in asserting its claims.  Craner Decl. Ex. K ¶ 45.  Ambac is seeking repurchase of the same loans under the same PSA as Plaintiff here.  Craner Decl. Ex. K, Prayer for Relief ¶ (a, c).

## LEGAL STANDARD

On a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  While "a court must accept as true all material factual allegations in the complaint," jurisdiction may not be shown "by drawing from the pleadings inferences favorable to the party asserting it."  *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (internal quotations omitted).  In resolving a motion to dismiss, a district court "may refer to evidence outside the pleadings."  *Makarova*, 201 F.3d at 113.

The Court may consider facts outside the complaint in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(7) for failure to join a necessary and indispensable party under Fed. R. Civ. P. 19.  *See Toney-Dick v. Doar*, No. 12 Civ. 9162, 2013 WL 1314954, at *11 n.12 (S.D.N.Y. Mar. 18, 2013).  Where the presence of a necessary and indispensable party would destroy diversity jurisdiction and the Complaint "raises only-state law claims, [the] Court lacks

subject matter jurisdiction, and the case must be dismissed." *Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*, No. 09 Civ. 1431, 2009 WL 2135396, at *6 (S.D.N.Y. July 16, 2009).

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) when it does not contain sufficient factual allegations "'to state a claim to relief that is plausible on its face.'" *BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, Nos. 09 Civ. 9783 and 09 Civ. 9784, 2013 WL 2452169, at *5 (S.D.N.Y. June 6, 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)) (dismissing breach of contract claim where complaint's allegations failed to state a claim that defendant breached a contractual duty). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Though the court must accept the factual allegations of a complaint as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *BNP Paribas*, 2013 WL 2452169 at *5 (quoting *Iqbal*, 556 U.S. at 663). Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In addition, under Federal Rule of Civil Procedure 8(a), in order to properly state a claim and avoid dismissal, a plaintiff must state "the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (internal quotation marks omitted).

## ARGUMENT

## I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION

### A.   Ambac Is A Necessary And Indispensable Party Whose New York Residence Defeats Diversity Jurisdiction.

Prior to this case being filed, Ambac sued Nomura in New York state court seeking repurchase of the ***same mortgage loans*** under the ***same PSA*** as the Plaintiff here. Ambac thus is

a necessary and indispensable party because it indisputably claims an interest related to the subject matter of this action and because resolution of this action in Ambac's absence could both prejudice Ambac and subject Nomura to conflicting obligations or dual liability.  Ambac, however, may not be joined because doing so would destroy whatever diversity exists between these parties.  Therefore, Rule 12(b)(7) requires Plaintiff's Amended Complaint to be dismissed.

### 1.      Ambac Is A Necessary And Indispensable Party.

Ambac is a necessary and indispensable party under Federal Rule of Civil Procedure 19. Any entity that "claims an interest relating to the subject of the action" must be joined in that action, if feasible, if the entity's absence would either (i) "as a practical matter impair or impede [its] ability to protect [its interest]," or (ii) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."  Fed. R. Civ. P. 19(a)(1)(B). Ambac clearly claims an interest relating to the subject of this action, as it has sued to compel repurchase of the same loans under the same contract for the same (or similar) alleged breaches. *See* Craner Decl. Ex. K.  Indeed, the Amended Complaint now adopts as its own many of the allegations in Ambac's complaint, and relies on Ambac's "breach notices" to attempt to allege breach.  *See* Am. Compl. ¶¶ 48-49; Am. Compl. Exs. 4-10.

Both of the rule's other requirements also are satisfied here.

***First***, Ambac may be harmed if it is not joined.  Disposing of this action without joining Ambac may "as a practical matter impair or impede [Ambac's] ability to protect [its] interest." Fed. R. Civ. P. 19(a)(1)(B)(i).  For example, the Court may conclude that Nomura did not breach any representation concerning the very loans for which Ambac alleges breach of representation and seeks repurchase.  This could preclude Ambac from asserting such claims in its separate

10

case.[4]  *See Errico v. Stryker Corp.*, No. 10 Civ. 3960, 2010 WL 5174361, at *4 (S.D.N.Y.

Dec. 14, 2010) (ordering joinder of necessary stockholders where "an outcome adverse to the

[plaintiff], even if not binding, could have a negative precedential effect . . . in a subsequent

lawsuit and even affect their ability to obtain a mutually beneficial settlement"); *Weber v. King*,

110 F. Supp. 2d 125, 128 (E.D.N.Y. 2000) (limited liability company was necessary party where

the presence of its members was "insufficient to assure adequate representation of the

Company's interests" because the members' interests were "in conflict"). *Spiro v. Parker Bros.*,

No. 91 Civ. 7759, 1992 WL 197405, at *1 (S.D.N.Y. Aug. 4. 1992) (adverse ruling against

plaintiff majority owners would prejudice absent minority owners in subsequent suit); *Smith v.

Kessner*, 183 F.R.D. 373, 375 (S.D.N.Y. 1998) (absentee parties were indispensable where *res

judicata* and collateral estoppel could affect their interests).

    ***Second***, disposing of the action without joining Ambac may "leave an existing party" –

Nomura – "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(B)(ii).  For example, the two courts

could interpret the same contractual provisions in fundamentally contradictory ways, leaving

Nomura at the risk of being unable to act without conflicting with a court order.  Furthermore,

the courts could differ on whether there has been a breach of contract.  Such risks are especially

present where, as here, the absent party has brought its own lawsuit seeking relief based on the

same contract, based on the same alleged breach of Mortgage Representations, and related to the

same loans.  *See, e.g., Smith*, 183 F.R.D. at 375 (granting motion to dismiss where an

---

    [4] Nomura has moved to dismiss Ambac's complaint for, among other reasons, lack of standing.  Nomura's
motion does not preclude Ambac's status as a necessary party to this action.  The relevant inquiry is whether the
absent party ***claims*** an interest relating to the subject of the action, not whether it actually possesses an enforceable
interest.  *See, e.g., Davis v. United States*, 192 F.3d 951, 958 (10th Cir. 1999) ("Rule 19, by its plain language, does
not require the absent party to actually possess an interest . . . ."); *Shermoen v. United States*, 982 F.2d 1312, 1317
(9th Cir. 1992) (under Rule 19, "the finding that a party is necessary to the action is predicated only on that party
having a ***claim*** to an interest" (emphasis supplied)).

indispensable party had filed an action in New York state court "based upon the same transaction as this action and also seek[ing] relief due to alleged misrepresentations by participants in that transaction.").  Indeed, "[t]he interest in shielding the defendant from inconsistent or multiple obligations is perhaps most acute where the absent party is also a party to a contract, the enforceability of which is the subject of the litigation." *Errico*, 2010 WL 5174361 at *3.  This holds true even more where the absentee claims rights as an obligee under the contract, as opposed to an obligor, because the obligee may subject the obligor to additional liability.  *See William A. Gross Constr. Assoc's., Inc. v. Am. Mfrs. Mut. Ins. Co.*, No. 07 Civ. 10639, 2009 WL 427280, at *11 n.24 (S.D.N.Y. Feb. 23, 2009) ("[W]here the absent party is a joint obligee . . . the courts will dismiss on indispensability grounds, because the absent party could bring a separate action, subjecting the obligors to double liability on the same claim." (internal quotation marks omitted)).

Ambac thus meets both elements of Rule 19(a)(1)(B).  This action cannot proceed without Ambac being joined.

### 2.    Because Ambac's Joinder Defeats Diversity Jurisdiction, This Action Should Be Dismissed.

Ambac cannot be joined to this action in this Court, however, because it, like Nomura, is a New York citizen for diversity purposes.  Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state . . . where it has its principal place of business." *See also Astra Oil Trading v. PRSI Trading Co. LP*, 794 F. Supp. 2d 462, 469 (S.D.N.Y. 2011).  Because Ambac's principal executive offices are in New York, it shares New York citizenship with Nomura and would destroy diversity if joined.  Craner Decl. Exs. J, K; *Boise Cascade Corp. v. Wheeler*, 419 F. Supp. 98, 102 (S.D.N.Y. 1976) (dismissing complaint where partnership with New York members was a party to contract at issue because the

partnership, an "indispensable party plaintiff to this action . . . cannot be joined without destroying the diversity jurisdiction").

Rule 19 sets out a four-factor balancing test for courts to consider in determining whether the inability to join a necessary and indispensable party compels dismissal:  "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."  Fed. R. Civ. P. 19(b).  Those factors unquestionably favor dismissal here.[5]

*First*, a judgment rendered in Ambac's absence could prejudice both Ambac and Nomura.  Nomura could face fundamentally inconsistent obligations under the same contracts.  Ambac risks losing whatever rights it has through an action to which it is not a party or facing the potentially binding effect of adverse rulings.  *See Smith*, 183 F.R.D. at 376 (holding that a party is indispensable where, without the party in the litigation, "defendants face a substantial risk of incurring multiple obligations on the same claim," and the rights of the indispensable party "could be prejudiced if [the plaintiff] is unsuccessful in pressing his claims").

*Second*, this court could not rely on protective provisions in the judgment or other measures short of joinder to cure or reduce such prejudice.  Because Plaintiff and Ambac seek relief based upon Nomura's alleged breaches in connection with the same set of mortgage loans, any remedy ordered – or denied – concerning Nomura's alleged repurchase obligations would necessarily affect ***all*** the parties' rights and obligations.  *Smith*, 183 F.R.D. at 376; *Envirotech*

---

[5] Notwithstanding the possibility that a judgment might be adequate without Ambac's joinder, the other three factors clearly favor dismissal under Rule 19.  *See Smith*, 183 F.R.D. at 376 ("The rule does not assign relative weight to any of the factors . . . .").

*Corp. v. Bethlehem Steel Corp.*, 98 F.R.D. 250, 252 (S.D.N.Y. 1983) *aff'd*, 729 F.2d 70 (2d Cir. 1984) (a party was indispensable where it "possesse[d] rights arising from the agreements in issue which [were] 'inextricably intertwined' with issues bound to be raised" in the action).

 ***Finally***, and most importantly, Plaintiff could join Ambac's suit in New York Supreme Court to obtain an adequate remedy.  Indeed, HSBC already has appeared in eight separate actions against Nomura in state court on behalf of similar trusts in connection with other securitizations.  Craner Decl. ¶ 13.  *See Smith*, 183 F.R.D. at 376 ("Upon dismissal of this action, plaintiffs would be able to join the defendants in this action as defendants in the state action. . . . It is in the best interest of the courts and the public to have this dispute settled in a forum where all the parties involved in the underlying series of transactions . . . can participate in the litigation.").

 Under circumstances like these, courts routinely dismiss actions for failure to join a necessary and indispensable party.  *See Ing. Hoschek Autoverleich GES.M.B.H. v. Balag, Ltd.*, No. 93 Civ. 8513, 1994 WL 701989, at *4 (S.D.N.Y. Dec. 14, 1994) (granting motion to dismiss based on Rules 12(b)(1) and 12(b)(7) where "adverse findings of fact could establish a negative precedent that prejudices [the absentee] in any subsequent proceeding" and could subject defendants to multiple or inconsistent obligations); *Spiro*, 1992 WL 197405 at *2-3 (dismissing breach of contract action where joinder of minority owners as plaintiffs would destroy diversity); *Errico v. Stryker Corp.*, 281 F.R.D. 182, 192 (S.D.N.Y. 2012) (granting motion to dismiss after applying the Rule 19 factors and finding that the necessary party would destroy diversity). Moreover, "judicial economy is better served with a state court lawsuit involving all required parties, instead of a judgment from a federal court that does not resolve the dispute between all parties, and leaves open the possibility for further litigation." *Errico*, 281 F.R.D. at 192.  The

Amended Complaint therefore should be dismissed.

**B.    The Trust Beneficiaries' Citizenship Defeats Diversity Jurisdiction.**

Independent of dismissal being warranted because of the failure to join Ambac, the

Amended Complaint should be dismissed for lack of diversity jurisdiction among the existing

parties.

When a trust acts as a plaintiff in a lawsuit, it takes on the citizenship of "the real parties

in interest" for purposes of diversity jurisdiction – namely, **each** of the trust's beneficiaries.  *See*

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930-31 (2d Cir. 1998);

*JPMCC 2005-CIBC13 Collins Lodging, LLC v. Philips S. Beach, LLC*, No. 10-20636-CIV, 2010

WL 4317000, at *3-4 (S.D. Fla. Oct. 22, 2010) (where special purpose entity, not trustee, of

REMIC trust sued under its own name, citizenship of all of the beneficiaries was taken into

account and case was dismissed for lack of diversity jurisdiction).  The Amended Complaint

plainly alleges that Plaintiff in this lawsuit is the Trust and that the Trustee is merely the vehicle

by which the Trust brings suit.  The introductory paragraph alleges that "Plaintiff, Nomura Asset

Acceptance Corporation Alternative Loan Trust, Series 2007-1 (the 'Trust' or 'NAA 2007-1')" is

"acting by and through HSBC Bank, USA, National Association, not individually but solely in

its capacity as Trustee . . . of the Trust."  Am. Compl. at 1.  The Amended Complaint seeks relief

for the Trust (not the Trustee), alleging that Nomura's alleged breaches "entitle the Trust to

compensatory damages and/or specific performance.  Am. Compl. ¶ 12; *see also* Compl, Prayer

for Relief ¶ (b) (praying for "an award of damages against Nomura compensating the Trust"); *id.*

¶ (d) (seeking "[a]ll costs of the Trust associated with this action").

Because this litigation is brought by the Trust, the citizenship of **all** its beneficiaries must

be considered.  *See Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 201

(3d Cir. 2007) ("[W]hen an artificial entity sues . . . in its own name . . . diversity jurisdiction . . .

depends on the citizenship of 'all the members.'" (quoting *Carden v. Arkoma Assocs.*,
494 U.S. 185, 195 (1990))); *Yueh-Lan Wang ex rel. Wong v. New Mighty U.S. Trust*, 841 F.
Supp. 2d 198, 206 (D.D.C. 2012) ("As seemingly all courts that have applied *Carden*'s
membership test to trusts have agreed, a trust's members include its beneficiaries.").  Moreover,
HSBC acknowledges that it is acting solely on behalf of the Trust and that it "has undertaken the
conduct of this litigation pursuant to the direction of certain Certificateholders of the Trust [i.e.,
the Trust's beneficiaries]."  Am. Compl. ¶ 13.  The Trustee has limited authority, and is
permitted to perform "only such duties as are specifically set forth in th[e] [PSA]."  PSA
§ 9.01(a).  Where, as here, a trustee merely acts as a "conduit for a remedy flowing to others . . .
the citizenship of the certificate holders (the real parties to this controversy) controls."  *U.S. Bank
Nat'l Ass'n v. Coop. Dist. of Spanish Fort – Highway 98 Pub. Facilities*, Civ. 11-0401-WS-M,
2011 WL 4499309, at * 6 (S.D. Ala. Sept. 29, 2011); *see also Mills 2011 LLC v. Synovus Bank*,
921 F. Supp. 2d 219, 227 (S.D.N.Y.  2013) ("[D]ecisions of several courts in the Second Circuit .
. . have held that in assessing the citizenship of a trust, courts are to look to the citizenship of 'all
members' of the trust, including the beneficiaries."); *Quantlab Financial, LLC v. Tower
Research Capital, LLC*, 715 F. Supp. 2d 542, 548-49 (S.D.N.Y. 2010) (applying *Emerald* and
holding that diversity jurisdiction should consider citizenship of both trustees and beneficiaries).

     Diversity jurisdiction does not exist here because at least one certificate holder shares
New York citizenship with Nomura.  AIG has identified itself to the Trustee as a beneficiary of
the Trust.  Craner Decl. Ex. G.  AIG is a citizen of New York for diversity purposes because it
has its principal place of business in New York.  *See* Craner Decl. Ex. L; 28 U.S.C. § 1332(c)(1);
*Astra Oil*, 794 F. Supp. 2d at 469.  Moreover, Ambac, another New York citizen, is also a Trust
beneficiary to the extent it is entitled to stand in the shoes of the certificate holders.  Because

AIG, Ambac, and Nomura are residents of the same state, there is no diversity jurisdiction under 28 U.S.C. § 1332(a)(2), and the Amended Complaint should be dismissed.[6]

## II.   PLAINTIFF'S CAUSES OF ACTION FOR DAMAGES ARE BARRED BY THE PARTIES' CONTRACTS

The MLPA and PSA contain sole remedies provisions that set forth the exclusive remedies available – cure or repurchase – if there has been a breach of a Mortgage Representation that materially and adversely affects the certificate holders' interests.  MLPA § 9; PSA § 2.03(c).  In its Amended Complaint, Plaintiff exclusively makes loan-level allegations that, if true, would result in breaches of the Mortgage Representations.  *See* Am. Compl. ¶¶ 39, 48.  Therefore, the only remedies available are the "sole remedies" specified in the PSA:  cure or repurchase of any individual loan shown to materially and adversely breach the representations, subject to the conditions for repurchase.

Plaintiff, however, seeks to eviscerate these unambiguous limitations by demanding compensatory damages not provided for in the governing agreements.  Am. Compl. ¶¶ 76-77; Prayer for Relief ¶¶ (b), (c).  Plaintiff may not obtain through this lawsuit relief different from and inconsistent with the specific and exclusive remedies the parties provided for in the event of a material breach of the Mortgage Representations.

### A.   Plaintiff Is Bound By The Contractual Sole Remedies For Any Breaches Of The Mortgage Representations.

The MLPA and PSA unambiguously make cure or repurchase the sole remedies against Nomura for a breach of the Mortgage Representations.  In each agreement, the parties expressly agreed that "cure or repurchase . . . constitute the sole remedies" for a breach of the Mortgage

---

[6] The Court need not consider the citizenship of all the Trust's beneficiaries because the presence of any non-diverse beneficiary destroys diversity jurisdiction.  If, however, the Court finds that dismissal cannot be based on the citizenship of Ambac and AIG alone, Nomura requests leave to take jurisdictional discovery limited solely to the identity and citizenship of the Trust's other beneficiaries.  *See Astra Oil Trading NV v. PRSI Trading Co. LP*, No. 08 Civ. 10467 (NRB), 2009 WL 928672, at *2 (S.D.N.Y. Apr. 6, 2009) (granting defendant's application to conduct limited jurisdictional discovery and leave to move to dismiss again under Fed. R. Civ. P. 12(b)(1)).

Representations.  MLPA § 9(c); *see also* PSA § 2.03(d) (it is "understood and agreed that . . . cure [or] repurchase . . . shall constitute the sole remedies against [Nomura]").  Compensatory damages are not included among the sole remedies and thus are not available for breach of the Mortgage Representations.  MLPA § 9; PSA § 2.03(d).

Numerous courts construing similar contracts have upheld the parties' intent to limit themselves to the contractually specified sole remedies.  *See, e.g.*, *EMC,* 2013 WL 1442177, at *5 (all breach claims that "relate to, and overlap with," loan-level representations subject to a repurchase protocol are limited to cure or repurchase as the sole available remedies); *Ambac Assurance Corp. v. EMC Mortg. LLC*, No. 651013/12, 2013 WL 2919062, at *3 (Sup. Ct, N.Y. Cnty. June 13, 2013) (holding that the sole remedy "applies to any breach of warranty pertaining to mortgage loans in the transactions"); *MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortgage Corp.*, 843 F. Supp. 2d 996, 1001 (D. Minn. 2012) (applying New York law and dismissing trustee's claim for damages because cure or repurchase are sole remedies specified in contract); *Assured Guar. Mun. Corp. v. DLJ Mortg. Capital, Inc.*, 964 N.Y.S.2d 57, 2012 WL 5192752, at *10 (Sup. Ct., N.Y. Cnty. Oct. 11, 2012) (repurchase provision "clearly expressed" that repurchase "would be the sole remedy").[7]

### B.     The Trustee Cannot Avoid The Sole Remedies To Which It Agreed.

The Trustee nonetheless pursues compensatory damages through its second and third causes of action on the basis that Nomura failed to repurchase and/or failed to provide notice of allegedly breaching loans.  Am. Compl. Prayer for Relief ¶¶ (b), (c).  Neither of these

---

[7] Courts applying New York law outside of the RMBS context also routinely enforce contractual limitations on the remedies available for breach.  *See, e.g.*, *Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 359 (2003) (holding a general covenant to be inapplicable where it "would subvert [an] 'exclusive remedies' limitation" in a contract); *L.K. Station Grp.*, 879 N.Y.S.2d at 117 (enforcing "explicit language" that "pointedly circumscribes the remedies available"); *Merrill Lynch Int'l v. XL Capital Assurance Inc.*, 564 F. Supp. 2d 298, 304 n.6 (S.D.N.Y. 2008) (a party must "avail itself of the remedies set forth in the contract" where the contract provides a sole remedy for a particular breach); *Deutsche Lufthansa AG v. The Boeing Co.*, No. 06 Civ. 7667, 2006 WL 3155273, at *4-6 (S.D.N.Y. Oct. 30, 2006) (dismissing request for relief beyond sole remedies specified in contract).

allegations, both of which focus on Nomura's alleged failure to comply with a contractual remedy, permit the Trustee to avoid the sole remedies to which it agreed.

Under New York law, the failure to provide a contractually specified remedy does not subject a party to liability beyond that remedy. *See Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2005-S4 v. Nomura Credit & Capital, Inc.*, No. 653541/2011, 2013 WL 2072817, at *9 (Sup. Ct., N.Y. Cnty. May 10, 2013) ("The repurchase obligation in this case is merely a remedy. It is not a duty independent of the Mortgage Representation breach of contract claims."); *MASTR*, 843 F. Supp. 2d at 1001 ("[U]nder the clear terms of the parties' agreement, the sole remedy available to [Plaintiff] is to seek cure, repurchase, or substitution of the allegedly defective WMC mortgages. [Plaintiff] may not recover additional remedies, including monetary damages, from WMC."); *see also Walnut Place LLC v. Countrywide Home Loans, Inc.*, 948 N.Y.S.2d 580, 581 (1st Dep't 2012) (a repurchase provision does not serve as a separate cause of action, but "merely provides for a remedy in the event of a breach"). If Plaintiff's theory were correct, then it could simply circumvent and eviscerate the sole remedies whenever the parties disagreed over whether a loan should be repurchased.

Plaintiff may only seek repurchase, and not damages, because the repurchase provisions of the MLPA and PSA "specify the extent of the Trustee's remedies." *Bear Stearns Mortg. Funding Trust 2007-AR2 v. EMC Mortg. LLC*, No. 6861-CS, 2013 WL 164098, at *3 (Del. Ch. Jan. 15, 2013). Plaintiff cannot escape its agreement to be limited to specific remedies if a Mortgage Representation is breached. Numerous courts in virtually identical scenarios have held that sole remedy provisions like these preclude a plaintiff from recovering damages. *See, e.g.*, *First Bank Richmond, Nat'l Ass'n v. Credit Suisse First Boston Corp.*, No. 1: 07-CV-1262, 2008 WL 4410367, at *12 (S.D. Ind. Sept. 24, 2008) (dismissing claim under repurchase provision

where plaintiff sought "remedial damages, and not specific performance" of repurchase);

*Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*, No. 8: 07-CV-00690, 2008 WL

1817294, at *8 (M.D. Fla. Apr. 22, 2008) (same).

But even if, contrary to *Nomura*, Plaintiff could sue for some "independent breach" of the

sole remedies provision, that claim would itself be subject to the contractual sole remedies.  The

PSA's broad language provides that cure or repurchase are the sole remedies "respecting" any

"Mortgage Loan as to which a breach has occurred."  PSA § 2.03(d).  Because there is no basis

for Nomura to repurchase a loan (or provide notice with respect to a loan) absent a breach of a

Mortgage Representation with respect to that loan, any alleged breach of the repurchase remedy

or notice obligations is a matter "respecting" a breaching loan, so is subject to the sole remedies.

## III.   PLAINTIFF'S FIRST CAUSE OF ACTION FOR SPECIFIC PERFORMANCE FAILS

### A.   Plaintiff Has Not Alleged That The Loans For Which It Seeks Repurchase Are Capable Of Being Repurchased.

To obtain specific performance, Plaintiff must allege that all aspects of the repurchase

process are capable of being performed.  *See Travellers Int'l AG v. Trans World Airlines, Inc.*,

722 F. Supp. 1087, 1104 (S.D.N.Y. 1989) (specific performance is only appropriate where the

plaintiff "is willing and able to perform its remaining obligations"); *River Point Towers*, 2012

WL 847322 at *2 (same); *Hadcock Motors, Inc. v. Metzger*, 459 N.Y.S.2d 634, 636, 638 (4th

Dep't 1983) (specific performance precluded by plaintiffs' inability to demonstrate compliance

with a contractual prerequisite to the performance requested); *Manzi v. Rossi*, 493 N.Y.S.2d 796,

797 (2d Dep't 1985) ("The plaintiff's inability and failure to perform his own contractual

undertakings . . . precludes a grant of specific performance . . . .").

Under the PSA, repurchase is only available at the "Purchase Price" – the remaining

principal balance of the loan – and only if the Trustee can actually deliver the loan to Nomura

upon repurchase.  PSA §§ 2.03(c)-(d).  Plaintiff has not alleged that the loans for which it seeks

repurchase have a Purchase Price or are capable of being delivered to Nomura.  For example,

Plaintiff cannot make these allegations with respect to mortgage loans that have been foreclosed

or otherwise liquidated.  Plaintiff's allegation that Nomura must provide a "'make-whole'

payment" in lieu of repurchase is wholly unsupported by the unambiguous terms of the PSA.

See Am. Compl. ¶¶ 60-61.[8]

*First*, a repurchase can only be made at the "Purchase Price" – the "outstanding principal

balance of the Mortgage Loan as of the date of . . . [re]purchase."  PSA § 1.01.  Loans that have

no principal balance – such as a Liquidated Loan (see PSA § 3.09(a)) – by definition have no

Purchase Price.  PSA § 1.01, Definitions, "Stated Principal Balance" ("The Stated Principal

Balance of a Liquidated Loan equals zero.").  The same is true for loans that have been charged

off, because that process leaves a loan with no Stated Principal Balance.  *See id.*, Definitions,

"Realized Losses" and "Stated Principal Balance."  Plaintiff has not alleged that any of the loans

for which it seeks repurchase has a Purchase Price as the PSA requires.  Its claim for specific

performance of repurchase, therefore, is deficiently pled.  *See MASTR Asset Backed Sec. Trust

2006-HE3 v. WMC Mortgage Corp.*, No. 11 Civ. 2542, 2012 WL 4511065, at *6 n.9 (D. Minn.

Oct. 1, 2012) (holding that "the parties did not contemplate the repurchase remedy as being

applicable" for loans that had been liquidated and thus had no principal balance).

Other courts have reached similar conclusions, rejecting as "nonsensical" Plaintiff's

argument that a defendant could be required to repurchase mortgage loans that were no longer

---

[8] *Wells Fargo Bank, N.A. v. Bank of America, N.A.*, No. 10 Civ. 9584, 2013 WL 1285289 (S.D.N.Y. Mar. 28, 2013) (Oetken, J.), does not hold otherwise.  In that case, the defendant itself argued that money damages were available under the agreement at issue; the Court was asked to determine only the scope and amount of those damages.  *Id.* at *9.  Nomura makes no such concession here, nor should it.  The PSA does not suggest that the parties intended for the "Purchase Price" to provide a measure of damages in lieu of repurchase; instead, it specifies only the price at which repurchase will be made if it can be made.

available for repurchase following foreclosure.  *See e.g.*, *First Place Bank v. Skyline Funding, Inc.*, No. 10 Civ. 2044, 2011 WL 3273071, at *4-5 (N.D. Ill. July 27, 2011) (granting motion to dismiss because plaintiff's claim "fails to create a plausible entitlement to relief").

**Second**, Plaintiff has not claimed that it can deliver any of the allegedly breaching Mortgage Loans to Nomura upon repurchase.  The PSA makes clear that the Trustee's return of the loan to Nomura is a necessary step in the repurchase process.  *See* PSA §§ 2.03(c)-(d). The Trustee must "release the related Mortgage File" to Nomura and "execute and deliver . . . the related instruments of transfer or assignment . . . as shall be necessary to transfer title" to the Mortgage Loan from the Trustee to Nomura.  PSA § 2.03(d).  It would be nonsensical for Nomura to "repurchase" something that no longer exists or cannot be provided to Nomura.  PSA §§ 2.03(c)-(d); *see Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902 (1987) (noting that a party cannot be required to perform "when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible").

## B. Plaintiff Fails To Plead Facts To Support Its Conclusory Allegations Of Breach.

Plaintiff alleges, based on its purported "re-underwriting," that 1,725 Group II Loans breached various contractual representations.  Am. Compl. ¶¶ 38-39.  Yet, except for eight loans (*see id.* ¶¶ 49, 51, 53), the Amended Complaint does not allege how the identified loans breach the Mortgage Representations.  Instead, Plaintiff attaches conclusory and ambiguous labels to the loans, such as vaguely alleging a breach due to "imprudent underwriting" without alleging that Nomura ever represented that the loans would be "prudently underwritten" – indeed, it did not make such a representation – or any facts suggesting that the underwriting was imprudent.  *E.g.*, Am. Compl. Ex. 4.  Plaintiff's annexation of an unadorned list of Mortgage Loans and alleged breaches fails to support a cause of action.  *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l*

*Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (the Rule 12(b)(6) standard "is not so liberal that a threadbare recital of the elements of a claim, supported by mere conclusory statements, can suffice to defeat a motion to dismiss" a contract claim) (internal quotation marks omitted).

The Amended Complaint merely describes how debt-to-income ("DTI") and loan-to-value ("LTV") ratios allegedly affect a borrower's ability to repay a loan and consequently the "value of . . . the Certificateholders' interests," Am. Compl. ¶ 39, but makes no allegations that, if true, would demonstrate a breach of a Mortgage Representation. For example, the Amended Complaint does not allege what DTI ratio, if any, was acceptable under the underwriting guidelines applicable to any specific loan in the NAAC 2007-1 securitization – much less the various guidelines applicable to the 1,725 loans for which it seeks relief and that were originated by numerous different originators. *Id.* ¶ 43. The Amended Complaint also does not address which loans' LTV ratios exceeded underwriting guidelines. *Id.* As to occupancy status, Plaintiff does not allege the underwriting guidelines' requirements concerning owner-occupancy or that those requirements were not followed. *See id.* ¶¶ 39, 44.[9]

Plaintiff also alleges that the unavailability of certain portions of certain Mortgage Loan Files demonstrates a departure from originator underwriting guidelines (*e.g.*, a copy of a second lien notice, Am. Compl. ¶ 51, and other unspecified "missing documentation," *id.* ¶ 45). The Amended Complaint, however, does not allege that such documentation was unavailable at the time of origination and does not allege how missing documentation would demonstrate a "fail[ure] to comply with applicable law." *Id.* ¶ 45. Plaintiff's allegations concerning purportedly "missing" loan files thus are far too vague to state a claim. *See Abraham v.*

---

[9] Moreover, Plaintiff's allegation, even if true, would not demonstrate that the borrowers did not intend, at the time they took out their mortgages, to occupy the mortgaged properties. *See Footbridge v. Countrywide Home Loans, Inc.*, No. 09 Civ. 4050, 2010 WL 3790810, at *9 (S.D.N.Y. Sept. 28, 2010) (dismissing claims related to occupancy status that were based on borrowers' representations at the time of loan origination).

*American Home Mortg. Servicing, Inc.*, --- F. Supp. 2d ---, 2013 WL 2285205, at *10 (E.D.N.Y. May 23, 2013) ("To survive a motion to dismiss a contract claim, the 'Plaintiff must provide ***specific allegations*** as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue.'" (quoting *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011) (emphasis supplied))).

Finally, while Plaintiff seeks to compel Nomura to repurchase all allegedly breaching Group II Mortgage Loans (Am. Compl. ¶ 70), with the exception of eight Loans (*id.* ¶¶ 49, 51, 53), the Amended Complaint fails to allege any facts about those loans to suggest that a breach exists.  Plaintiff's Amended Complaint therefore does not provide Nomura or this Court with any basis to evaluate the allegations of breach with respect to the overwhelming majority of the loans at issue.  Plaintiff's unsubstantiated list of allegedly breaching loans merely contains vague and conclusory allegations that the representations were breached in unspecified ways.  Plaintiff does not allege, with respect to each individual loan, how the Mortgage Representations were breached and whether the alleged breach "materially and adversely affects the interests of the related Certificateholders."  PSA § 2.03(c).  Instead, Plaintiff only refers to very limited examples of breaches that allegedly occurred with respect to a small number of Mortgage Loans. Am. Compl. ¶¶ 38-45.  This simply is not enough.  *See Abraham*, 2013 WL 2285205 at *10.

## IV.    PLAINTIFF'S THIRD CAUSE OF ACTION FOR BREACH OF THE "NOTICE" PROVISION FAILS

Plaintiff's third cause of action, based on Nomura's alleged failure to provide notice of breaching loans, is neither cognizable under the PSA nor supported by sufficient factual allegations concerning Nomura's knowledge.

***First***, Plaintiff's allegation that it is entitled to an independent remedy for Nomura's alleged breach of the "notice" provision in PSA § 2.03 fails because the language concerning

notice does not create a separate duty for Nomura.  The repurchase remedy, of which the notice provision is a part, "is not a duty independent of the Mortgage Representation breach of contract claims."  *Nomura,* 2013 WL 2072817 at *8.  Plaintiff cannot assert a separate cause of action, pursuing separate relief, for conduct that is derivative of the underlying alleged breaches of the Mortgage Representations.

**Second**, Plaintiff's allegation that Nomura knew of the alleged breaches upon the execution of the relevant agreements also fails.  *See* Am. Compl. ¶¶ 47; 84.  These allegations are conclusory and based solely on Plaintiff's own purported "discovery," which cannot be imputed to Nomura.  *Id*.  Plaintiff does not allege any facts sufficient to suggest that Nomura's due diligence provided it with notice that any particular mortgage loan in this Securitization was in breach of a Mortgage Representation.  *Id*.  Plaintiff's allegation that "it is not commercially plausible" that Nomura would not have discovered breaches through its due diligence because of a high number of alleged breaches of the Mortgage Representations (Am. Compl. ¶ 47) is classic hindsight-based pleading and is entirely circular given that it is premised on the unsupported allegation that a high number of breaches exist.  *See Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11 Civ. 7426, 2012 WL 3065929, at *6-8 (S.D.N.Y. July 25, 2012) (holding that a property's condition at a later date has no bearing on whether representations were breached when they were made).  Indeed, Plaintiff alleges no facts concerning what due diligence Nomura performed – much less what information was obtained from the due diligence.  Plaintiff cannot establish Nomura's knowledge of alleged breaches simply by alleging that breaches occurred.

## CONCLUSION

For the reasons and upon the authorities stated above, Nomura respectfully requests that the Court grant Nomura's motion to dismiss this action and award to Nomura such further relief as the Court deems just and proper.

Dated: New York, New York
       September 30, 2013

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:_____*/s/ Matthew L. Craner*_____
       Joseph J. Frank
       jfrank@orrick.com
       Matthew L. Craner
       mcraner@orrick.com
       Paul F. Rugani
       prugani@orrick.com
       James Grohsgal
       jgrohsgal@orrick.com

51 West 52nd Street
New York, New York  10019-6142
Tel:  212-506-5000
Fax:  212-506-5151

*Attorneys for Defendant*
*Nomura Credit & Capital, Inc.*